IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| CHARLES R. GRIFFIN, Jr., individually and on behalf of all persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HARLEY DAVIDSON CREDIT CORP. and EAGLEMARK SAVINGS BANK, <br><br> Defendants. | Case No. 8:08-466-HFF |

**REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

William H. Boice
bboice@kilpatrickstockton.com
Craig E. Bertschi
cbertschi@kilpatrickstockton.com
Kali Wilson Beyah
kbeyah@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA  30309
Telephone:   (404) 815-6500
Facsimile:    (404) 815-6555

H. Sam Mabry, III, Fed. I.D. No. #3252
smabry@hsblawfirm.com
Charles M. Sprinkle, III, Fed. I.D. No. #9712)
csprinkle@hsblawfirm.com
HAYNSWORTH SINKLER BOYD, P.A.
75 Beattie Place - Eleventh Floor
P.O. Box 2048
Greenville, S.C. 29602
Telephone:  (864) 240-3200
Facsimile:   (864) 240-3300

Counsel for Defendants Eaglemark Savings Bank
and Harley-Davidson Credit Corp.

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.04, Defendants Harley-Davidson Credit Corp. ("HDCC") and Eaglemark Savings Bank ("ESB") submit the following Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment:

I.     INTRODUCTION AND STATEMENT OF FACTS

In his Complaint, Plaintiff Charles Griffin has asserted two claims: (1) that Defendants charged late fees in excess of the amount allowed under the South Carolina Consumer Protection Code ("CPC") (Complaint ¶ 39); and (2) that Defendants charged him repossession fees in violation of the CPC. (Complaint ¶ 40). Defendants moved for summary judgment on both of these claims. In response, Mr. Griffin has abandoned the vast majority of his case.

First, Mr. Griffin expressly does not oppose Defendant Eaglemark Savings Bank's motion for summary judgment. Pl.'s Resp. Mem. at 1, 12. Thus, the court should enter judgment as a matter of law on all claims against ESB and it should be dismissed from this litigation.

Second, with regard to his claim that HDCC charged late fees in excess of the amount allowed by the CPC, Mr. Griffin now admits that "as the evidence established in the record in this case [shows], HDC[C] did not charge interest in an amount exceeding the cap under the South Carolina Consumer fees." Pl.'s Resp. Mem. at 7. Mr. Griffin further concedes that "Plaintiff Griffin is not pursuing any claim against HDC[C] for late fees." Pl.'s Resp. Mem. at 7. As such, Plaintiff concedes that both ESB and HDCC are entitled to judgment as a matter of law

1

on Mr. Griffin's claim that HDCC charged late fees in excess of the amount allowed by the CPC.[1]

As a result of these concessions, only one claim remains: Mr. Griffin's claim that HDCC violated §37-2-414 of the CPC by charging him the expenses HDCC incurred in trying to repossess his motorcycle. Mr. Griffin argues that the CPC does not permit HDCC to charge him these expenses because HDCC did not *successfully* repossesses his motorcycle. In so arguing, Mr. Griffin seeks to benefit from having successfully evaded HDCC's repossession efforts. Griffin Dep. 116-117-Reply App. Tab 1. But even before this Court weighs the competing arguments on the meaning of the CPC, HDCC notes that Mr. Griffin's repossession expenses claim suffers from yet another fatal flaw: *He never paid them*. Instead, his employer, The Griffin Firm, LLC paid the repossession expenses at issue in this case. Mr. Griffin, therefore, lacks standing to maintain his repossession claim. Finally, even if Mr. Griffin had standing, his repossession expenses claim fails as a matter of law because it is preempted by the Depository Institution Deregulation and Monetary Control Act of 1980 (the "DIDA") and because the claim is based on an erroneous construction of S.C. Code Ann. § 37-2-414.

However, even if Mr. Griffin has standing, and this Court finds that the DIDA does not preempt the CPC in this instance, HDCC is still entitled to prevail. As a matter of undisputed fact, HDCC charged only those expenses allowed by the CPC. The question before the Court is

---

[1] Should the Court find Mr. Griffin did not concede his late fee claim against HDCC and all his claims against ESB, Defendants submit that Mr. Griffin offered no evidence on these claims sufficient to defeat summary judgment. When the nonmoving party fails to go beyond its pleadings and, "designate[] specific facts showing that there is a genuine issue for trial", Fed.R.Civ.P. 56(e)(2) requires that summary judgment be entered in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Sullivan v. Cato Corp.*, No. 8:04-651-GRA-BHH, 2006 U.S. Dist. LEXIS 14605 (D.S.C. Feb. 10, 2006). As such, Defendant ESB is entitled to summary judgment on all of Mr. Griffin's claims, and HDCC is entitled to summary judgment on his late fee claim.

2

one of law and the facts relevant to Mr. Griffin's fees claim are undisputed. In August of 2004, Mr. Griffin financed his purchase of a Harley-Davidson motorcycle with a loan from ESB, as evidenced by a Promissory Note. Complaint, Exhibit A. The Note gives ESB the right to repossess Mr. Griffin's motorcycle in the event of a default and to charge Mr. Griffin any costs associated with such repossession, *i.e.* the costs of "taking and storing the vehicle and other expenses that the Lender has incurred." Complaint, Exhibit A, p. 1 and ¶¶ 4, 13 and 14. The Note was then assigned to HDCC pursuant to the Master Assignment Agreement between Defendants. Complaint, Exhibit A, ¶ 21. HDCC was also responsible for servicing Mr. Griffin's loan. Complaint, ¶¶ 15-18.

Mr. Griffin repeatedly defaulted on his loan, making no payments for a period of nearly a year and a half. Wagner Decl. at ¶ 5 – App. Tab 4; Plaintiff's Response to Defendants' Request for Admissions no. 4-6 – App. Tab 8. Due to his chronic defaults, HDCC began repossession efforts. Wagner Decl. at ¶ 10 – App. Tab 4. HDCC hired three vendors—one to confirm Mr. Griffin's address, another to confirm that he had utility service at his address, and a third to repossess Mr. Griffin's motorcycle. *Id.*

Mr. Griffin knew that HDCC was trying to collect on the loan or alternatively, to repossess his motorcycle. He did nothing to cooperate and instead thwarted HDCC's efforts, as demonstrated in his deposition testimony:

> Q: Are you aware of a repossession agent coming to your home, trying to repossess the motorcycle?
> A: I remember someone leaving some notes on the mailbox; that's about it.
> Q: And what did the notes say; do you remember?
> A: "Call Harley-Davidson." "Call this number." "Call Harley-Davidson."
> Q: And did you?
> A: Unh-unh.

3

> Q:   Why not?
>
> A:   Why? I knew what they wanted. I didn't have it. I was trying to juggle money around. No use talking about it. I was doing the best I could.
>
> Q:   Did you ever consider surrendering the motorcycle?
>
> A:   Not really. I figure I could always catch the payments up.

Griffin Dep. 116-117 – Reply App. Tab1. Meanwhile, Mr. Griffin had his motorcycle locked up in his garage, where the repossession agent could not get to it. Griffin Dep. 182-83 – App. Tab 1. ("Unless somebody -- unless they broke in the house to get it -- I mean, broke in my garage. I mean, that's the only way I could see them getting it, so -- And from what I understand -- I got a fence around the house. And it's just sitting in the garage."); Complaint ¶ 19.

HDCC passed on to Mr. Griffin the costs of its repossession expenses. No mark-ups or other fees were assessed to Mr. Griffin. Wagner Decl. at ¶ 14 – App. Tab 4. Mr. Griffin has not contended that he did not default on his loan, nor has he contended that the repossession expenses were unreasonable. Thus, if Mr. Griffin is found to have standing to pursue his claim, Defendants' Motion for Summary Judgment on the repossession fees presents a narrow issue: When a debtor is admittedly in default on a loan, does Section 37-2-414 of the South Carolina Code prohibit a creditor from charging the debtor the reasonable fees incurred by the creditor for unsuccessful attempts to locate and repossess the collateral securing the loan? As demonstrated below, the Court should answer "no" to this question and hold that Mr. Griffin's claim under § 37-2-414 of the South Carolina Consumer Protection Code must fail as a matter of law.

II.    ARGUMENT AND CITATION OF AUTHORITY

A.    Mr. Griffin Lacks Standing To Bring The Claims In This Suit

As discussed in Defendants' Opening Memorandum (pp. 29-31), Mr. Griffin lacks standing to maintain this action because the repossession expenses about which he complains

4

were paid by his employer, The Griffin Firm, LLC, not Mr. Griffin individually.  Griffin Dep. at 35-36, 192-93 – App. Tab 1.  Mr. Griffin admitted as much in his deposition:

> Q:   When you made the catch-up payment on your motorcycle, on January 3 of     2007, that  Ingels' [sic] receipt, you remember that?
>
> A:   Yes.
>
> Q:   Who was the -- where did the money  come from to make that payment?
>
> A:   I guess out of my account.
>
> Q:   The account that you were making the $300 check payments on?
>
> A:   Yeah.  They wouldn't take a check.  So, I assume I took it out of my account.  I can't recall, but that's where the money come from.
>
> Q:   The account from the Griffin Firm?
>
> A:   Griffin, LLC?
>
> Q:   Yes.
>
> A:   Correct.
>
> Q.   That's where the money to make that payment on January 3, 2007 came from?
>
> A:   Correct.
>
> Q:   And when you made the catch-up payment in 2008, before filing this lawsuit, did the money to make that catch-up payment also come from the account of the Griffin Law Firm, LLC?
>
> A:   It's not the Griffin Law Firm.  It's the Griffin Firm, LLC.
>
> Q:   The Griffin Firm, LLC?
>
> A:   Yes.  Did a computer check, that's where that money would have come from.
>
> Q:   From the Griffin law firm's account,  not your personal account?
>
> A:   I don't really have a personal account.

Griffin Dep. 192-193 – App. Tab 1.  Therefore, it is the Griffin Firm, LLC that paid the repossession expenses at issue in this case.

Recognizing this fatal flaw in his claims, Mr. Griffin filed a declaration in which he claims that the payments for the loan in question were made from his personal funds.  *See* Pl.'s Resp. Mem., Ex.  8.  This declaration testimony is contrary to his deposition testimony, and "should be disregarded as a sham issue of fact."  *United States v. Charleston County*, 318 F.

5

Supp. 2d 302, 317 (D.S.C. 2002); *Alba v. Merrill Lynch & Co.*, 198 F. Appx. 288, 300 (4th Cir. 2006) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (citation omitted). For it is well settled that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Rohrbough v. Wyeth Labs. Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *see also Smith v. Pepsi Bottling Group*, No. 2:06-0040-DCN-RSC, 2007 U.S. Dist. LEXIS 65201, at *29 (D.S.C. Aug. 31, 2007), *aff'd*, 271 F. Appx. 313 (4th Cir. 2008). Thus, Mr. Griffin's self-serving affidavit cannot save his claims and confer standing in this case.

Moreover, South Carolina law is clear that Mr. Griffin is a separate legal person from the limited liability company that made the payments at issue. *Mid-South Mgmt. Co. v. Sherwood Dev. Corp.*, 649 S.E.2d 135, 140 (S.C. Ct. App. 2007) ("It is generally recognized that a corporation is an entity that is separate and distinct from . . . its officers and stockholders"). He cites no case or other authority to contradict the settled principle that owners, principals, and other corporate stakeholders are estopped from denying the existence of the corporate form when it happens to be expedient or advantageous. *See*, *e.g., DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976); *United States v. Theodore*, 479 F.2d 749, 753 (4th Cir. 1973); *Mangum v. Md. Cas. Co.*, 500 S.E.2d 125, 127-28 (S.C. Ct. App. 1998) (all cited and discussed in Defendants' Opening Memorandum). Indeed, courts generally must presume that the corporation has and maintains a separate and independent existence from its stockholders unless sufficient proof is offered to the contrary. *See, e.g., Hunting v. Elders*, 597 S.E.2d 803 (S.C. Ct. App. 2004). Mr. Griffin has made no attempt to point to any admissible

6

fact that would compel this Court to disregard the corporate status of The Griffin Firm, LLC. Plaintiff, therefore, lacks standing to pursue the claims asserted in the present suit. This fact, alone, justifies entry of summary judgment in favor of HDCC.

B.  The Repossession Expenses That HDCC Charged Mr. Griffin Do Not Violate § 37-2-414 of the South Carolina Consumer Protection Code.

Seeking to establish that HDCC charged him repossession fees in violation of § 37-2-414, Mr. Griffin offers this Court a statutory interpretation that would create unwise precedent and that would ultimately hurt South Carolina consumers. Furthermore, his statutory interpretation has no basis in the statute's language and is contrary to settled principles of South Carolina law. South Carolina law is clear that the interpretation of a state statute is a question of law for the Court. *King v. AnMed Health*, 659 S.E.2d 131, 134 (S.C. 2008). Under S.C. Code Ann. § 37-2-414, lenders can recover "reasonable expenses incurred in realizing on a security interest" in any collateral securing a debt. Mr. Griffin urges the Court to make successful repossession a requisite to recovery of repossession expenses under the statute. His position should be rejected for several reasons.

First, public policy reasons justify rejecting Mr. Griffin's statutory interpretation requiring "actual repossession" of the collateral because that interpretation *rewards* borrowers in default who hide collateral from their creditors. Requiring successful repossession as a requisite to recovering repossession expenses would also hinder lawful repossessions and create a dangerous climate for creditors and repossession agents seeking to rightfully repossess collateral. Indeed, Mr. Griffin would benefit from his own failure to respond to HDCC's collection and repossession efforts even though he "knew what they wanted" and just "figure[d] [he] could always catch the payments up." Griffin Dep. 116-17 – Reply App. Tab 1. Moreover, Plaintiff's proposed interpretation of the statute would actually hurt consumers. Creditors would be less

7

inclined to allow workouts of a loan once repossession efforts were commenced if the only way the creditor could recover its expenses of attempted repossession would be to obtain and sell the collateral.

Making light of such policy concerns, Mr. Griffin argues in his opposition memorandum, that "HDC[C] did not have to accept Plaintiff Griffin's payment and reinstate the note. Rather, HDC[C] could have returned Griffin's payment and pursued its remedies through repossession, disposing of the collateral in a commercially reasonable manner and assessing reasonable expenses in realizing on the security upon Plaintiff Griffin." Pl.'s Resp. Mem. at 11. But this "election of remedies" proposition finds no basis in South Carolina law, and Mr. Griffin cites none to support it. In fact, S.C. Code Ann. § 37-5-111 requires that creditors allow consumers an opportunity to cure a default. The statute likewise makes clear that a creditor is not required to elect between the remedy of repossession and that of permitting Mr. Griffin to cure his loan. *Id.* (providing that once a consumer has been permitted to cure a default, the statute "imposes no limitation on the creditor's right to proceed against the consumer or goods that are collateral or which are rented or the lessor's right to recover the property"). S.C. Code Ann. § 37-5-111(2). *See also Brockbank v. Best Capital Corp.*, 534 S.E.2d 688, 694 (S.C. 2000) (explaining that in a secured transaction, a creditor's rights in proceeding against the consumer are cumulative, and no election of remedies is required).

Second, Mr. Griffin's proposed statutory interpretation effectively inserts the phrases "actually repossessed" and "actually realized" into the statute. This interpretation of S.C. Code Ann. § 37-2-414 is unprecedented. Mr. Griffin does not point the Court to a single case interpreting this statute (or even a similar statute from another state) to require actual repossession of the collateral. At least one other court has interpreted a similar code provision to

8

include expenses for unsuccessful repossession. *See, e.g., Banks v. Paul White Chevrolet, Inc.*, 629 S.E.2d 792, 796 (W. Va. 2006) (implying that parallel provision, W. Va. Code § 46A-2-115(a), would include expenses "incurred in an attempt to lawfully repossess" automobile). Nowhere does the word "actually" appear in Section 37-2-414, nor does the statute limit the recovery of expenses to only successful efforts to repossess collateral. Mr. Griffin's statutory interpretation violates fundamental, well-settled principles of statutory construction set forth by our appellate courts. *See Keyserling v. Beasley*, 470 S.E.2d 100, 101 (S.C. 1996) (this Court does "not sit as a superlegislature to second guess the wisdom or folly of decisions of the General Assembly"). If the Legislature wanted to limit repossession fees to only those incurred in "actually repossessing" or "actually realizing" the collateral, the Legislature could have put the word "actually" in the statute. It did not. The South Carolina Courts have consistently refused to supplement or modify statutory language where it is clear that the Legislature could have, just as easily, included that language in the statute. *See e.g., Edwards v. Campbell*, 633 S.E.2d 514, 517 (S.C. 2006) (refusing to read compound interest into a statute prescribing the legal rate of interest, holding that "if the Legislature intended for interest to be compounded in a certain way pursuant to Section 34-31-20(B), 'it could have plainly said so.'"); *see also Lamie v. U.S. Tr.,* 540 U.S. 526, 538 (2004) (discussing extensive U.S. Supreme Court authority which requires rejecting argument that "would have us read an absent word into the statute").

Third, while there is not a South Carolina case that defines the phrase "realizing collateral" or that speaks to whether successful repossession is required under S.C. Code Ann. §37-2-414, the permissibility of charges for unsuccessful attempts to repossess collateral is supported by other sections of Title 37 and by Article 9 of the South Carolina Uniform Commercial Code, S.C. Code Ann. §§ 36-9-601-635 ("UCC"), which govern a secured party's

9

right to repossess collateral. Such statutes and related case law are instructive and persuasive because the CPC expressly provides that "Unless displaced by the particular provisions of this title, the Uniform Commercial Code and the principles of law and equity…supplement[s] [the Consumer Protection Code's] provisions." S.C. Code Ann. § 37-1-103. Moreover, § 37-2-414, expressly makes other portions of the CPC important to its interpretation because it states that "[T]he agreement with respect to a consumer credit sale may not provide for any charges as a result of default by the buyer *other than those authorized by this title*." (emphasis added).

Title 37, specifically, § 37-5-103(6), provides that a creditor may collect expenses incurred as part of an unsuccessful repossession effort. S.C. Code Ann. § 37-5-103(6) states the "consumer may be held liable in damages to the creditor…if, after default and demand, the consumer has wrongfully failed to make the collateral available to the creditor." Inherent to those "damages" is the cost incurred by the creditor in attempting to repossess the collateral though the repossession was thwarted by the consumer's wrongful failure make the collateral available. Thus, the CPC recognizes a lender's right to collect its expenses of repossessing collateral, even if the repossession was unsuccessful.

Likewise, South Carolina's Uniform Commercial Code and case law interpreting it demonstrate that successful repossession is not a requisite to collecting repossession expenses. Under South Carolina law, once a consumer is in default, the title to the collateral and the right to possession of the collateral immediately unite in the creditor, leaving the borrower with only a right of redemption. *Jordan v. Citizens & S. Nat'l Bank of S.C.*, 298 S.E.2d 213, 214 (S.C. 1982); *Isaac v. Gene's Used Cars*, 372 S.E.2d 102, 104 (S.C. Ct. App. 1988). Thus, after a 20 day cure period provided for in S.C. Code Ann. § 37-5-111, a consumer has only a right of redemption and, if he desires to redeem his rights in the collateral, must tender payment in

10

accordance with § 36-9-623. In order to redeem collateral under that section, "a person shall tender: (1) fulfillment of all obligations secured by the collateral; and (2) the reasonable expenses and attorney's fees described in Section 36-9-615(a)(1)," S.C. Ann. § 36-9-623(b), *which includes the expenses of retaking the collateral.* Whether the collateral was actually physically retaken, however, is irrelevant to a creditor's right to recover its expenses. Applying this principle, in *Brockbank v. Best Capital Corp.*, 534 S.E.2d 688, 694 (S.C. 2000), the South Carolina Supreme Court explained that a creditor's rights after default under Article 9 of the UCC are not contingent on technicalities such as how or when a creditor actually obtained physical possession of collateral. Accordingly, Mr. Griffin's proposed interpretation of S.C. Code Ann. § 37-2-414 finds no support under South Carolina law.

C.    Mr. Griffin Improperly Relies On A Consumer Affairs Employee's Testimony That Is Entitled To No Deference By This Court.

In support of his claim that Defendants charged improper "prerepossession" or "repossession" expenses, Mr. Griffin cites to testimony of Department of Consumer Affairs ("DCA") employee Donna DeMichael. Pl.'s Resp. Mem. at 10. This DCA employee's testimony regarding the legality of charges for unsuccessful attempts to repossess collateral is entitled to no deference by this Court. *See Toll Bros. v. Dryvit Sys.,* 432 F.3d 564, 568 (4th Cir. 2005) (nonmoving party must have *admissible* evidence to oppose summary judgment). Ms. DeMichael's opinion is not the result of a DCA declaratory ruling, administrative interpretation or formal agency rulemaking. *See* DCA Regulations 28-25, 28-26 and 28-27. Ms. DeMichael expressly stated in her deposition that she had not prepared to testify regarding the legality of repossession charges and was not testifying on behalf of the DCA as to those issues. DeMichael Dep. at 55-56 – Reply App. Tab 2. This issue was not identified in the Rule 30(b)(6) notice, and Mr. Griffin's counsel did not issue a cross-notice designating any additional topics. More

11

importantly, as noted in Defendants' Opening Memorandum (p. 25), any official decision on behalf of the DCA must be made in accordance with the procedures set forth in the DCA regulations governing complaints and decisions on such complaints. (DCA Regulations 28-10 through 28-24). The procedures cannot be circumvented by the individual testimony of a DCA employee who is not authorized to speak on those issues.[2] *See also A.T. Massey Coal Co. v. Barnhart*, 472 F.3d 148, 168 (4th Cir. 2006) (declining to give deference to commissioner's opinion where statute gave policymaking authority to another person, the trustees). Moreover, even if Ms. DeMichael was authorized to speak for the DCA on the issue of repossession fees, which she was not, her opinion is entitled to no deference because she gave no reasoned basis for her conclusion in the deposition. *See A.T. Massey Coal Co.,* 472 F.3d at 169 (refusing to give commissioner's decision "some respect" because commissioner "never made even a passing attempt to justify her decision under the statute" and "[v]irtually no reasoned consideration appears on the face of the decision . . . and what reasoning does appear is invalid").

D.      <u>Mr. Griffin's Claim Of Unlawful Repossession Fees is Preempted by § 521 of the DIDA</u>

As discussed in Defendants' Opening Memorandum (p.12-18), Mr. Griffin's claim that HDCC charged him repossession fees in violation of S.C. Code Ann. § 37-2-414 is preempted by the DIDA. Tellingly, Mr. Griffin does not dispute that the DIDA preempts S.C. Code Ann. § 37-2-414, allowing state-chartered banks to export the interest rates and fees permitted in the

---

[2] Mr. Griffin notes that Ms. DeMichael is a "licensed lawyer and expert in the field of South Carolina consumer law." Pl.'s Resp. Mem. at 10. Ms. DeMichael, however, does not work in the Legal Division or Administration Division of the DCA (the Divisions responsible under the Regulations for issuing official decisions on behalf of the Department, DCA Regulation 28-4.A.(2).). Ms. DeMichael, in fact, testified that her position in the Consumer Affairs Division is not an attorney position and she is "not actively an attorney for the Department. (DeMichael Dep. at 8 – Reply App. Tab 2.)

12

state in which they are chartered. He does not dispute that the repossession expenses at issue in this case are permitted by the laws of Nevada, where ESB is chartered. Instead, he argues (1) that the repossession expenses at issue are not "interest" entitled to DIDA preemption and (2) that HDCC, as ESB's assignee, is not entitled to preemption. But Mr. Griffin's arguments are inconsistent with federal precedent and the case law on which he relies for his position is inapposite.

Mr. Griffin's claim that the repossession expenses at issue do not constitute "interest" under the DIDA should be rejected. His argument ignores the breadth of the term "interest" and relies on case law that presents issues distinct from those presently before the Court. While DIDA grants banks the right to charge their customers interest and late fees permitted by the laws of the state where they are chartered, the Office of the Comptroller of the Currency has promulgated a regulation that defines the term "interest" broadly. 12 C.F.R. § 7.4001(a) provides that the term "interest" includes:

> *any payment compensating a creditor or prospective creditor for* an extension of credit, making available of a line of credit, or *any default or breach by a borrower of a condition upon which credit was extended.* It includes, *among other things,* the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

(emphasis added). The phrase "among other things" establishes that the enumerated types of costs and expenses are not exclusive. Thus, "interest" includes any type of payment that compensates a creditor for "any default or breach by a borrower of a condition upon which credit was extended". Here, there can be no doubt that the repossession fees, such as those charged to

13

Mr. Griffin in this case, were and are designed to compensate Defendants for Mr. Griffin's default and failure to pay the Note on a timely basis.

For his narrow reading of the term "interest" under the DIDA, Mr. Griffin relies on the inapposite cases of *Richardson v. Nat'l City Bank*, 141 F.3d 1228 (7th Cir. 1998) and *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303 (8th Cir. 1997). In those cases, the courts held that *insurance* charges did not constitute "interest" under the National Banking Act. But insurance charges, in contrast to repossession fees, are expressly enumerated in the OCC's regulation as fees that do *not* constitute "interest". 12 C.F.R. 7.4001 ("[Interest] does not ordinarily include . . . premiums and commissions attributable to insurance . . . . ). Thus, *Richardson* and *Doe* present distinct facts that are not instructive here, where fees that are not expressly excluded from the OCC's definition of "interest" are involved.

Second, while HDCC is not a state-chartered banking institution, as assignee of the Note, HDCC stands in the shoes of ESB and has the same rights and liabilities as if it had been an original party to the contract." *Women in Military Serv. for Am. Mem'l Found. v. Hartford Life Ins. Co.*, 21 F. Appx. 186, 192 (4th Cir. 2001). Therefore, just as Mr. Griffin's claims against ESB, a state-chartered bank, are preempted (a point Mr. Griffin appears to concede), so are his claims against HDCC preempted. South Carolina courts have not addressed the issue, but other courts have recognized that the right to preemption under the DIDA or the parallel National Banking Act is a right that can be assigned. *See e.g., Munoz v. Pipestone Fin., LLC*, 513 F. Supp. 2d 1076, 1079 (D. Minn. 2007) (holding that claims against the plaintiff's non-bank assignee were preempted because "'courts must look at the originating entity (the bank), and not the ongoing assignee . . . in determining whether the NBA applies.'") (citations omitted); *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) ("it makes sense to look to the

14

originating entity (the bank), and not the ongoing assignee (the store), in determining whether the NBA applies."). Mr. Griffin seeks to distinguish *Krispin* by arguing that the bank in that case maintained a level of control over the plaintiff's account. But this point does not undermine the fact that *Krispin* and importantly, the more recent case of *Munoz,* stand for the proposition that a non-bank assignee enjoys the benefit of preemption and exporting interest rate ceilings. This rule was recognized in recent secondary materials that discussed the *Munoz* decision, a case that Plaintiff has not distinguished and cannot distinguish. *See* Clark & Barbara Clarks, *Non-bank Debt Collectors May Take Advantage of Federal Usury Preemption for Credit Cards*, 2 Clark's Secured Transactions Monthly (Sept. 2007). Thus, Mr. Griffin's repossession claim against HDCC is preempted, just as is his repossession claim against ESB.

## CONCLUSION

In light of the foregoing, Defendants Harley-Davidson Credit Corporation and Eaglemark Savings Bank respectfully request that their Motion for Summary Judgment be granted.

This 20th day of October 2008.

HAYNSWORTH SINKLER BOYD, P.A.

*s/ Charles M. Sprinkle III*

H. Sam Mabry, III (Fed. I.D. No. #3252)
smabry@hsblawfirm.com
Charles M. Sprinkle III (Fed. I.D. No. #9712)
csprinkle@hsblawfirm.com
75 Beattie Place - Eleventh Floor
P.O. Box 2048
Greenville, S.C. 29602
Telephone: (864) 240-3200
Fax: (864) 240-3300