IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Charles R. Griffin, Jr., *individually and on behalf of all persons similarly situated*,<br><br>                     Plaintiff,<br><br>    vs.<br><br>Harley Davidson Credit Corp.,<br><br>                     Defendant. | Civil Action No. 8:08-cv-466-HFF-BHH<br><br>**O R D E R** |

This matter is before the court on the plaintiff's Motion to Compel Discovery. [Doc. 73.] The plaintiff seeks complete responses to one of its served interrogatories and three related requests for production. On April 16, 2009, the plaintiff served the defendant with his Revised Second Interrogatories and Requests for Documents. (Def. Ex. 1.) The defendant made its responses on June 22, 2009. The Court will consider the interrogatory and requests for production, in turn.

## DISCUSSION

**I.    Interrogatory No. 1**

The plaintiff seeks to compel more complete information concerning 386 customers of the defendant, implicated by one of its interrogatories. The defendant ostensibly extends credit for the purchase of motorcycles. As will be discussed, the plaintiff contends that the defendant improperly charged its customers delinquency charges for late payments on the motorcycles, pursuant to its credit sales agreement with them. The relevant interrogatory reads as follows:

### INTERROGATORY NO. 1

> Identify each customer of HDCC who was charged collection and repossession expenses by HDCC.

The word "identify" is expressly defined by the plaintiff's Revised Second Interrogatories to require, among other things, the full name of the individual; their present employer and job title; and their last known residential address and telephone number. (Def. Ex. 1 at 3.) In response, however, the defendant produced a spreadsheet containing only the names of 386 individuals, without any of the other requested information. The plaintiff seeks to compel it now. The defendant responds that the interrogatory (1) is inappropriate at the pre-certification stage; (2) seeks confidential and private information of non-parties; (3) does not go to issues related to a determination on class certification; and (4) was not properly limited to individuals reasonably within the class.

The defendant has also raised generalized concerns over the plaintiff's motivation for such a request. The Court would address the threshold question as to whether the discovery is even permissible and then make some additional and brief comments regarding their strategic character, of whatever kind.

As stated, the parties debate the propriety of pre-certification discovery, generally. The defendant contends it is disfavored. The Court finds it permissible and even necessary here.

First, the district judge has already provided for it. Discovery related to class certification was expressly authorized in the staged scheduling order. [Doc. 67.] Moreover, other district courts in this circuit have concluded that plaintiffs are "generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met." *See Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 185 (D. Md. 2003); *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 201-02 (D. Md.2001). As the plaintiff emphasizes, the United States Supreme Court has contemplated discovery for such purposes. *See Oppenheimer Fund, Inc. V. Sanders*, 437 U.S. 340, 354 n.20 (1978). And, the Fourth Circuit itself has echoed the permissibility of discovery to aid in the certification determination. *See Doctor v. Seaboard Coast Line*

*Railroad Co.*, 540 F.2d 699, 707 n.25 (4th Cir.1976) (approving use of precertification discovery to determine if action was maintainable as class action).

So, to the Court, the only issue is whether the information and documents sought by the plaintiff can be rightly characterized as necessary to assist the Court in its decision whether or not to certify the class. It seems that they would.

The plaintiff contends that the identity of the 386 individuals is necessary to determine whether the "typicallity," "commonality," and "numerosity" requirements of Federal Rule of Civil Procedure 23 have been satisfied, Fed. R. Civ. P. 23(a).

The plaintiff has sued the defendant over an alleged violation of South Carolina's Consumer Protection Code. (Compl. at 7.) Section 37-2-414 of that statute provides that "except for reasonable expenses incurred in realizing on a security interest, the agreement with respect to a consumer credit sale may not provide for any charges as a result of default by the buyer other than those authorized by this Title. A provision in violation of this section is unenforceable." S.C. Code § 37-2-414. The plaintiff contends that the defendant charged the plaintiff and other customers a monthly delinquent charge in excess of the amount allowed by the statute. The Complaint defines the class, in part, as "all those persons who have entered into a consumer credit sale agreement with the Defendants in South Carolina where such agreement provides for delinquency charges in excess of the maximum amount allowed under the South Carolina Consumer Protection Code." (Compl. ¶ 23.)

Critically, the Protection Code Statute defines "consumer credit sale agreement" as "a sale of goods, services, or an interest in land in which . . . **the buyer is a person other than an organization [and] [t]he goods** . . . **are purchased for a personal, family or household purpose**." S.C. Code § 37-2-104 (emphasis added). The plaintiff contends that the bald list of names does not assist him in determining either the purpose of the motorcycle purchases or the quality of the purchaser, whether a person or an organization.

3

The plaintiff claims that with the additional personal information, such as last known addresses and telephone numbers, he will be able to explore these elements of the class definition through questionnaires and even potentially interviews and depositions.

The defendant raises a number of objections. First, the defendant claims that the list of names alone, somehow gives sufficient evidence of the "potential size of the putative class," such that numerosity is simply apparent from it. (Def. Resp. at 12.) But, in fact, the list does no such thing, on its face, because without the ability to investigate the purpose of the customer's purchase, there is no way of knowing whether they meet the statutory requirements and ultimately the class definition. The fact that the list contains a large number of people does not mean the class is numerous without some ability to know that the people share typical and common claims.

The defendant also somehow argues that recourse to the types of claims available to non-party putative members is not relevant to issues of typicality and commonality. The defendant selectively quotes *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006): "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Id*. (quotation omitted). The defendant, therefore, contends that typicality and commonality are established by *only* looking at the named plaintiff and not surveying the claims of non-parties for consistency therewith. Without overstating it, the position of the defendant seems impossible.

First, *Deiter* itself says no such thing. The quoted sentence does not mean what the defendant would claim, and the Fourth Circuit, elsewhere in that opinion, expressly states that the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id*. at 466-67. This sentence begs a comparison and, more specifically, a comparison rooted in the knowledge of the relative claims between the representative party and the putative members. But, the Fourth Circuit, in *Deiter*, made itself even more clear:

4

> Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members.

*Id*. at 467. In that decision, the panel then proceeded to make precisely the type of comparison that the plaintiff, in this case, seeks to make before the Court. *Id*.

Unless the Court has grossly misconstrued the defendant's meaning, *Deiter* could not stand in any greater contradiction to the point for which the defendant offered it. The defendant thinks that production of "Griffin's account file, [and] contract and credit application" are all that is needed to measure typicality and commonality because he is the "*representative* plaintiff." (Def. Resp. at 14 (emphasis in original).) In every respect, this would seem untrue.

There are two options. The defendant can either produce the information implicated by the interrogatory or it can stipulate, as the plaintiff suggests, as to which individuals entered into a consumer credit sales agreement as that phrase is fully defined by the statute. For various reasons, the stipulation is likely beyond what the defendant's knowledge would allow it to make. The Court, however, would compel the defendant to respond to the interrogatory in either manner, whichever it elects.

As a final note, the defendant limited its identification of customers to those individuals whose motorcycles were actually repossessed. The plaintiff complains that the list is, therefore, incomplete because the statute may have still been violated in regards to customers who were assessed collection costs but whose contracts were reinstated for having paid the entire past balance due, but subsequently fell into arrears and had their motorcycle repossessed. To not include those individuals, would seem to evade the inclusion of individuals which actually meet the class definition – individuals having been assessed charges in excess of the statutory allowance. (Compl. ¶ 23.) The class definition is not otherwise qualified on the basis of whether or not the motorcycle was actually ever

repossessed. The Court would further compel additional "identifying" information, as defined, regarding individuals in the above described category.

## II. Requests for Production

The plaintiff also moves to compel responses to three requests for production, which implicate the same individuals and certification issues and for essentially the same reasons. The requests read as follows:

> **REQUEST FOR DOCUMENT NO. 1**
> All credit applications for each customer identified in response to Plaintiff's Revised Second Set of Interrogatories.
>
> **REQUEST FOR DOCUMENT NO. 2**
> All contracts, agreements or other documents evidencing the terms by which any customer identified in response to Plaintiff's Revised Second Set of Interrogatories received financing for the purchase of a motorcycle, vehicle or aircraft.
>
> **REQUEST FOR DOCUMENT NO. 4**
> All documents that contain all or part of the information requested in Interrogatory 1 of Plaintiff's Revised Second Set of Interrogatories.

The defendant raises additional objections to production of documents implicated by these requests. The first is that they contain "highly personal and confidential information about individuals who are not parties to this suit." (Def. Resp. at 8.) The defendant contends that because an attorney-client relationship has not attached between plaintiff's counsel and putative class members, then plaintiff's counsel cannot permissibly be given access to information such as social security numbers and the like. The point feels like a red herring.

First, as the plaintiff notes, the defendant has not actually asserted some sort of privilege over the information. Second, the defendant was free to produce relevant documents subject to the redaction of sensitive information contained therein. The Court cannot see how identifying information, contained in the documents, which is otherwise public, to wit, addresses and telephone numbers, would require an attorney-client privilege to disclose. There may be certain information, for which an argument could be fashioned,

6

that the defendant is somehow contractually or legally prohibited from disclosing. The defendant has not been this specific with its response. Certainly, the Court would not compel social security numbers at this stage. But, it does not seem that a blanket refusal to produce the documents, based on a want of an attorney-client privilege, was the reasonable response. The defendant's resort to cases which establish the *time* at which the attorney-client relationship is established in the class action context, *see In re Shell Oil Refinery*, 152 F.R.D. 526 (E.D. La. 1989); *The Kay Co. v. Equitable Prod. Co.*, 246 F.R.D. 260), does not seem to dictate any particular outcome here, where, the defendant has not sufficiently explained how any information contained in the documents is only reviewable in the context of such a relationship.

The defendant also contends that the loan documents requested by the documents make no reference to whether a motorcycle was purchased for personal use and that the plaintiff, based on what is observable in his own loan file, should already be so aware. First, there is a verifying quality to the nature of the Requests. The plaintiff, in part, is seeking physical evidence of the information disclosed in response to Interrogatory No. 1. Second, it seems possible that an examination of the relevant loan documents might reduce, or eliminate, the need for a more extensive investigation through questionnaires and interviews. Simply because the defendant would represent that the loan documents contain no evidence as to the reason for the purchase of the motorcycle's does not mean that the plaintiff has to take it at its word. And, it does not seem an absolute certainty that just because the plaintiff's loan documents contain no such notation that it follows that others do not as well, definitively.

The Court, therefore, would compel production of the documents. The defendant remains free to redact certain information, therein, based on relevant objections. The parties should make diligent efforts to come to a resolution of any dispute over the redaction of information before recourse to the Court.

7

### III. The Plaintiff's Expert

The plaintiff has intimated that it will use an expert to perform a marketing survey of the defendant's customers, based on the requested discovery, to determine whether they are individuals or an organization and to determine for what purpose they purchased motorcycles. (Mot. Compel at 5.) The defendant vigorously objects that the time for expert designation has already expired and that because the use of such expert is impermissible, compulsion of the requested discovery is futile. The Court would reject that the matter is squarely before it. First, the plaintiff has not actually designated the expert. The proffer is aspirational. The plaintiff may ultimately employ some other method to explore the defendant's customer list. He may decide not to offer the opinion of any expert. The expert may be able to offer some kind of fact testimony. It is currently all a matter of speculation. Until the plaintiff actually attempts to introduce evidence either at a dispositive motion stage or at trial or upon some specific motion of the defendant contesting the matter based on an actual procedural violation of the plaintiff, the Court will not render any judgment over it.

### IV. The Plaintiff's Motivation

Integral to the story of the defendant's objection is that the plaintiff is principally motivated by a concern over the viability of his own case as a proper representative of the class and that counsel are performing a fishing expedition to locate a substitute class representative. The defendant so speculates principally because it appears that there exists evidence that the plaintiff's law firm, rather than the plaintiff himself, payed for the motorcycle. The defendant, therefore, believes that the plaintiff will fail to demonstrate that the motorcycle was purchased for a personal or family use.

On the facts, the Court will not be persuaded by the insinuation. It seems reasonable that the plaintiff is motivated, in part, by the reason alleged. There is no real evidence, however, of it. Even the evidentiary point made by the defendant concerning the remission of payments by the plaintiff's law firm does not definitively prove that the

motorcycle was not purchased for personal use. But, more importantly, the discovery sought strikes the undersigned as legitimately relevant to the issue of class certification. This strong show of relevance is not something the Court can dismiss lightly even if smoke around the requests imply an additional and less compelling flame of motivation.

## **CONCLUSION**

Wherefore, based upon the foregoing, the plaintiff's motion to compel [Doc. 73] is GRANTED. The defendant shall serve upon the plaintiff all discovery responses within twenty (20) days. A failure to do so may result in the assessment of costs and other sanctions. The plaintiff also has an outstanding motion to compel a Fed. R. Civ. P. 30(b)(6) deposition. The Court will attempt to render a decision on that motion as soon as practicable.

IT IS SO ORDERED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 14, 2010
Greenville, South Carolina